**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

C. A. NO.: 2012:12085

STERGIOS PAPADOPOULOS,
      Plaintiff,

v.

LNV CORPORATION and AVELO
MORTGAGE, LLC, ORLANS MORAN,
PLLC
      Defendants

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO DEFENDANT LNV CORPORATION'S MOTION TO DISMISS**

INTRODUCTION

Before the Court is yet another perfunctory motion to dismiss filed by a bank intent on stripping a homeowner of his personal residence, in this case a home in Andover, Massachusetts located at 8 Olde Berry Rd (herein the "Property"). In this case however, the Plaintff and has valid claims related to the predatory nature of the foreclosure planned at his home.

The defendant, LNV Corporation (herein "LNV") seeks dismissal of the Plaintiff's Complaint on the grounds that the Plaintiff's Loan is not Predatory, despite the affidavit of Stephanie Jacobson, C.P.A., indicating that, axiomatically, it *is* predatory.  The Defendants further argue that, as an assignee of a predatory loan, it is entitled to flout consumer protection laws, and avoid accountability for its nefarious business practices on grounds that it is an "assignee."

It is important to note that, in any event, this Motion is not properly before this Court, as the Plaintiff has properly sought remand. Accordingly, assuming Remand is granted, the Plaintiff  requests the Attorney's fees, and costs, associated with the preparation of this Opposition be paid by the Defendants.

1

FACTS

The essential facts are that the Defendant has sought to foreclose on a loan it knew, or should have known, to be predatory, with an exceptionally high interest rate. Rather than re-hash the allegations in the Complaint, the Plaintiff, Stergios Papadopulos (herein "Stergios" or Plaintiff") refers to the Material Facts sufficient to defeat the Defendant's Motion.

As a preliminary matter, the Defendant argues that, because the accountants who brokered the Plaintiff's mortgage, and with whom the Plaintiff has been engaged in litigation since 2008 checked a box on his loan application, his home is therefore an "investment property," and that they may avoid the proscriptions of G.L.c. 93A, and G.L.c. 183C, as well as the Massachusetts Debt Collection Act (the MCDA). What the Defendant fails to note is that the Mortgage signed by the Plaintiff, and under which the Defendant itself seeks to foreclose, contains an "Occupany" covenant (see Verified Complaint, Exhibit A ¶ 6, Page 6) wherein the Plaintiff agreed, at the time he signed the Mortgage, to reside in the property within 60 days. The mortgage, of course, was signed later in time than the loan application. Indeed, an argument may be made that this disparity in the loan application, and the mortgage documents themselves should have only drawn the Defendant's attention to the predatory nature of the loan at issue.

The Plaintiff further notes that he had attempted to settle his claims with the Defendant by loan modification agreement, see Complaint ¶¶ 17-19.

Plaintiff also notes that LNV purchased the Plaintiff's loan for a substantial discount, and knew of the predatory features associated with the loan at the time of purchase, see Complaint ¶¶ 29-32. LNV Corporation regularly purchases loans with these kinds of features, see Complaint ¶ 33. Because the facts in the Complaint <u>must</u> be taken as true for the purposes of this Motion this Court ought reasonably infer that LNV purchased the Plaintiff's loan to achieve the collateral value of the Plaintiff's Property, and not to work with the Plaintiff to negotiate a more reasonable payment schedule.

<u>STANDARD FOR A MOTION TO DISMISS</u>

In reviewing the sufficiency of a complaint under rule 12(b)(6), the Court must take as true the allegations of the complaint, <u>as well as</u> such inferences as may be drawn therefrom in the plaintiff's favor *Blank v. Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 407 (1995).

"What is required at the pleading stage are factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief," *Iannacchino v. Ford Motor Co.*, 451 Mass. 623 , 636 (2008), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *Iannacchino v. Ford Motor* Co., supra at 636.

Exhibits attached to the Complaint, are "fair game," for a motion to dismiss, see *Schaer v. Brandeis University*, 432 Mass. 474, 477 (2000). Likewise, it is "reasonable" for a Court considering a Motion to Dismiss to take judicial notice of both events referenced in the docket, as well as, "court's records in a related action," see *Jarosz v. Palmer*, 436 Mass. 526, 530 (2002). While the standard of review post *Iannachino* is somewhat more stringent than the *Nader v. Citron*, "no set of facts" standard that antedated it, the bar is still set relatively low, despite the fact that defendants, particularly large corporate defendants, now seem to file 12(b)(6) motions by rote, without consideration as to the actual substance of the Pleading at issue, 372 Mass. 96 , 98 (1977).

While *Iannachino* and its progeny do increase, to some degree, a Court's discretion to dismiss a totally bogus complaint, that one case did not overturn the Massachusetts Rules of Civil Procedure. "[T]he rules of procedure require only a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests; [this Court should] reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits," *Michael Anthony Associates, Inc. v. Next Jump Inc.*, 2012 Mass.App.Div. 38,

41 (2012). "A dismissal under FedR.Civ.P. 12(b) for failure to state a claim is generally not on the merits, however, and the Courts will typically give plaintiffs leave to file an amended complaint. This generous procedure is in accord with the federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities, and that plaintiffs should be given every opportunity to cure a formal defect in pleading." *Buchler v. United States*, 384 F. Supp. 709, 714 (E.D. Cal. 1974).

Counsel for the Plaintiff apologizes in advance if the Courts notes a deficiency in the pleadings.

ARGUMENT

(A) *Even if the Opinion of Stephanie Jacobson, C.P.A. Does Not Compel this Court to Find the Plaintiff's Loan Predatory, Equity Demands That It Should So Find.*

The issue here is how Mr. Papadopulos's long term interest rate is to be calculated not for the purposes of determining the interest rate under the Massachusetts Predatory Home Loan Practices Act (herein the "MPHLPA"). If we take the Defendant's disclosure statement as accurate, then we know that Mr. Papadopulos has a $376,000.00 loan with the following features:

(1) an initial rate of 9.15%, which was, per the note, as low as his rate would ever be;

(2) a variable rate, changing every six months, and based on the London Interbank Offer Rate (LIBOR) for each six month period;

(3) A 40 year, 480 month amortization schedule, due and payable over a period of 30 years or 360 months;

(4) A final payment in the amount of $258,755.17.

According to the math plain on the face of Plaintiff's TILA disclosure statement, the money he actually borrowed from the Defendant, which was actually to be paid back over the term of the loan was $117,244.83. To borrow this money, the Plaintiff was to pay $1,148,805.30 in interest charges. As noted by the Expert C.P.A. employed by the Plaintiff, in Exhibit G, this amounts to an interest rate of 13.135% over the life of the loan, well more than the 12.88% permitted under the MPHLPA at the time.

4

The Defendant seems to believe that, as a matter of law, no loan can be predatory, no matter its predatory features, if those predatory features are simply rolled into a veneer of balloon payments, variable rates, and extended amortization schedules.

This simply cannot be accurate. Not in a Court of Equity. And not when a forfeiture of the underlying collateral is at issue.

Indeed, the Defendant's arguments as to "post-introductory rate" rates (run up periods to the ultimate, fully amortized rate) have been made before, and rejected. "[Defendant's arguments as to the "second" introductory rate"] certainly does not foreclose the plaintiff's, which this court notes is supported by a compelling claim that the legislature did not intend a lender to be permitted to avoid G.L.c. 183C simply by easing the borrower out of the 'introductory rate' over the course of a year or two." see *Doyle v. U.S. Bank*, 26 Mass. L. Rep. 202 (Mass. Super. Ct. 2009) (Henry, J.) Denying motion to dismiss.

The Defendant relies, in support of its Motion, on *DiVittorio v. HSBC Bank, USA (In re DiVittorio)*, 670 F.3d 273, 291 (1st Cir. 2012). In that case, the Plaintiff and defendant had entered into a loan modification, which entitled the Plaintiff to a *reduced* interest rate, following 22 months of timely payments. The TIL statement associated with the transaction assumed these payments to be successfully made, and computed the APR based on that success. The Plaintiff argued this computation was in error, on the grounds that the Plaintiff was a known sub-prime borrower and so "doomed to fail," in pursuing the loan modification. At issue before the First Circuit was whether the lower payments were properly disclosed to the Plaintiff. The Court, in finding that they *had* been properly disclosed, explained, "given the parties' respective promises in the loan document, IndyMac was bound contractually to reduce the interest rate in accordance with those terms. Incorporating that reduction, therefore, gave the debtor a more complete picture of the long-term interest rate and was consistent with the intent of the Commentary," see *Id.* at 292. As such, it seems the holding in *DiVittorio* is

inapposite to the position taken by the Defendant. The Court, extrapolating slightly, appears to say that, for TILA purposes, the amount financed is what is actually, contractually, financed – regardless as to how the lender arrives at that amount. It would be inconsistent for this Court to find that the interest rate in the instant case should not account for the fact that very little principal is to be paid over the life of the loan when the TILA statement makes that much clear.

Certainly, the most equitable way of determining the amount financed is to take the amount of interest due under the loan, look at the principal, and figure out what the interest rate is on that basis.

Regulation Z explains that, "The annual percentage rate is a *measure of the cost of credit*, expressed as a yearly rate. [...] Explanations, equations and instructions for determining the annual percentage rate in [...] are set forth in appendix J to this regulation," see 12 C.F.R. 226.22 ("Determination of Annual Percentage Rate").

Appendix J to Regulation Z provides that for the Actuarial Method, "[t]he annual percentage rate shall be the nominal annual percentage rate determined by multiplying the unit-period rate by the number of unit-periods in a year. ," See 12 C.F.R. Appx. J (b)(1); the Appendix defines a "unit period" as follows: "[i]n all transactions other than a single advance, single payment transaction, the unit-period shall be that common period, not to exceed 1 year, that occurs most frequently in the transaction," see *Id* at (b)(4)(i). In this case, and in most mortgage loans, this would be a month.

*Ergo*, if we follow the actuarial method, and perform an annual analysis, the payments would be computed as they were computed by Ms. Jacobson – according to the actual amount of interest paid over the year, divided by the number of months in the year: 13.135%.

Similarly, Appendix J provides that, "under the United States Rule method, at the end of each payment period, the unpaid balance of the amount financed is increased by the finance charge earned during that payment period and is decreased by the payment made at the end of that payment period." In essence, under the "United States Rule," the amount financed is taken together with the principal

6

balance, and the interest rate is computed by determining by subtracting the finance charge from the amount of the payment (of principal and interest).

The difference in terms of interest paid by choosing either the actuarial method, or the United States Method, should be negligible. (A "finance charge" includes "interest" see 12 C.F.R. 226.4(b) (1)). This is because, in either case, the total cost to the Plaintiff of his credit is computed, more or less, by looking at the amount of interest he pays, and by the amount of time in which he will pay that interest.

Taking the payments together, and looking at the total paid is consistent with the aims of the MPHLPA. The Act, "prohibits lenders from dividing any loan transaction into separate parts to avoid the terms of the Act. G.L.c. 183C, §17(a)." Where a borrower's loan was "offered with a two-year introductory rate, that the loan would have to be paid off or refinanced at the end of the introductory period and that the loan was purposely structured in this fashion to avoid the obvious characteristics of a 'high cost home loan,' the Massachusetts Superior Court (Hines, J.) found that, "[d]rawing all reasonable inferences from the facts pleaded, [facts had been plead] sufficient to meet the definition of a "high cost home loan," under the act," see: *Powell v. Ocwen Loan Servicing*, LLC, 29 Mass. L. Rep. 366, 16-17 (Mass. Super. Ct. 2012).

It is virtually certain that the Legislature did not intend for borrowers to lose their home because lenders had managed to find new, and creative ways to skirt the ambit of the MPHLPA. The plain language of the MPHLPA provides, without limitation, that "[a]ny person who purchases or is otherwise assigned a high cost home loan" is subject to the claims or defenses that could be asserted against the original lender. G.L.c. 183C §15(a). This, obviously, includes assignees. The MPHLPA has a five year statute of limitations, and can be invoked at "any time," to protect against foreclosure, see G.L.c. 183C §§ 15(b) (1)(2).

Finally, as noted above, the Plaintiff signed the mortgage, covenanting to reside in the property

within sixty days – and, per the Plaintiff's Verified Complaint, he did reside there.[1] Moreover, the assertion that the loan was for an investment purpose is belied by the fact that the Plaintiff was obviously paying money to his ex-wife, a fact of which this Court may take Judicial Notice.

Since the Plaintiff is a consumer impacted by a High Cost Loan, or, at least, facts remain to be determined as to whether the loan is High Cost, the Defendant's Motion to Dismiss Count I ought to be DENIED.

    (B)    *LNV is Liable Under the Consumer Protection Act, since it Engaged the Plaintiff in Fruitless Loan Modification Attempts, and By Purchasing and Foreclosing on Predatory Loans as a Business Model*

The Defendant appears to believe, by pointing out irrelevant truths from Massachusetts decisional law, it can somehow exempt itself from liability. While it is true that a given bank does not necessarily have a particular obligation to modify a given loan. And, it is also true that, generally speaking, in mortgage cases, the statute of limitations on claims accruing pursuant to G.L.c. 93A ends four years from the date of loan signing. Mere recitation of the law, however, does not serve to vitiate the Plaintiff's claims. This is, primarily, because the Plaintiff did not plead those facts alone, or even at all, but rather makes his G.L.c. 93A claim based on the totality of the circumstances surrounding the predatory loan at issue.

As a preliminary matter, a successful MPHLPA *is*, by statute, a successful Consumer Protection Act claim. Likewise, if the Plaintiff is successful in his debt collection practices act claims, he may establish liability pursuant to G.L.c. 93A via statute.

However, the Plaintiff, in his Complaint, seeks relief more broadly, and additionally, according to a cause of action, "within the penumbra," of a common law or statutory right, and which is "immoral, unethical … and unscrupulous conduct, " see: *PMP Associates, Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 596, (1975), *quoting FederalTrade Comm. v. Speary & Hutchinson Co.,* 405 U.S.

---

1   He really did live there at the time.

233, 244 n.5, (1972). Relevant to this Opposition – "The existence of unfair acts and practices must be determined from the circumstances of each case," see *Commonwealth v. DeCotis*, 366 Mass. 234, 242 (1974). Indeed, "Chapter 93A created new substantive rights by making conduct unlawful which was not unlawful under the common law or any prior statute. The fact that particular conduct is permitted by statute or by common law principles should be considered, but it is not conclusive on the question of unfairness," *Schubach v. Household Finance Corp.*, 375 Mass. 133, 137 (1978).

Here, the Plaintiff has alleged the following facts:

(1). He had a predatory loan, or, at least, he had a loan which, when considered in its totality, clearly required the payment of a great deal of interest for a limited accrual of equity.

(2). He sought a loan modification with the Defendant, by and through its agents, or putative agents, engaging an attorney to represent him in the process – and, importantly, did not pursue other options available to him because he was engaged in the loan modification process.

(3). While Stergios was in the midst of applying for a loan modification with the Defendant, the Defendant hired Orlans | Moran, PLLC, to begin foreclosure proceeding, which did begin foreclosure proceedings, without first ascertaining LNV's entitlement to make use of the Courts of the Commonwealth.

(4). At least for the purposes of the Defendant's Motion, LNV both knew the Plaintiff's loan was predatory, and actively purchases, or has purchased, loans with a high interest rate, or features that may be deemed predatory.

Foreclosure initiated while plaintiff's request for a loan modification was pending, in violation of HAMP guidelines, gave rise to a substantial likelihood that the plaintiff would prevail on his claim that the mortgagee had violated its duty to act in good faith. See *Cruz v. Hacienda Assoc., LLC*, Bankr. No.

10-43793-MSH, 446 B.R. 1, 2011  (Bankr. D. Mass. Jan. 26, 2011).

Likewise, multiple cases in this District have held that compliance with a "Home Affordable Modification Program," ("HAMP") Trial Payment Period (or TPP) "has the appearances of a contract," See *Belyea v. Litton Loan Servicing*, LLP, 2011 U.S. Dist. LEXIS 77734, 2011 WL 2884964, at *7-*9 (D. Mass. July 15, 2011); *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, 2011 U.S. Dist. LEXIS 72079, 2011 WL 2637222, at *3-*4 (D. Mass. July 6, 2011); *Stagikas v. Saxon Mortg. Services, Inc.*, 795 F. Supp. 2d 129, 2011 WL 2652445, at *4-*5 (D. Mass. 2011); *Bosque v. Wells-Fargo Bank N.A.*, 762 F. Supp. 2d 342, 351-53 (D. Mass. 2011); *Durmic v. J.P. Morgan Chase Bank, NA*, 2010 U.S. Dist. LEXIS 124603, 2010 WL 4825632, at *2-*4 (D. Mass. Nov. 24, 2010). *Kiluk v. Select Portfolio Servicing, Inc.*, 2011 U.S. Dist. LEXIS 155999, 23-24 (D. Mass. Dec. 19, 2011); *c.f. Kattar v. Demoulas*, 433 Mass. 1, 9 n.6 (2000) citing *Kahn v. Waldman*, 283 Mass. 391, 394 (1933). "Although the term of forbearance was not set by the parties, an agreement to forebear followed by actual forbearance for a reasonable time constituted sufficient consideration for the defendant's promise." *Id.*

Moreover, other cases in this district have held that a plaintiff's contention that they were entitled to a permanent loan modification under the TPP, even after being denied, was sufficient to survive a motion to dismiss. *See, e.g., Stagikas v. Saxon Mortg. Services, Inc.*, 795 F. Supp. 2d 129, 2011 WL 2652445, at *4-*5 (D. Mass. 2011). "Plaintiff's legal detriment, however, consisted of more than the modified monthly payments. As Judge Stearns noted in *Durmic*, "under the TPP, plaintiffs were required to provide documentation of their current income, make legal representations about their personal circumstances, and agree to undergo credit counseling if requested to do so. . . Plaintiffs could also be required to make payments into a newly established escrow account. These conditions of the TPP all constitute new legal detriments to plaintiff that flowed from his acceptance of the TPP." Citing: W*it v. Commercial Hotel Co.*, 253 Mass. 564, 572 (1925).

Of course, a violation of the implied covenant of good faith and fair dealing is sufficient to give rise to liability under G.L.c. 93A, see *Tunfankjian v. Rockland Trust Co.*, 57 Mass.App.Ct. 173, 179 (2002) "The same evidence that supported the jury's findings of a breach of the covenant of good faith and fair dealing also supported the Judge's finding that the Bank's conduct amounted to an unfair or deceptive act under G. L. c. 93A."

It would be unfair in the extreme for this Court to simultaneously impute knowledge of the Plaintiff's G.L.c. 93A claims to the Plaintiff, and then deny him the right to bring Consumer Protection Act claims related to a modification he should have had reason to believe would be forthcoming based on the imputed knowledge of the problems underlying the loan.

Denying a premature motion to dismiss is consistent with First Circuit precedent. The First Circuit cautions that the district court should not dismiss a claim for statute of limitations reasons at the motion to dismiss stage unless there is "no doubt that an asserted claim is time-barred," *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). Indeed, "[i]n many circumstances a signatory may be bound by the contents of a document he signed even if he has not read it; but Massachusetts, along with other courts, is often more forgiving at least where deliberate fraud by the other side confronts mere negligence by the signer." see *Frappier v. Countrywide Home Loans, Inc.,* 645 F.3d 51, 57 (1st Cir. Mass. 2011). It bears repeating that the loan application in the possession of the Defendant seeks a loan that the Plaintiff did not ultimately obtain, covenanting to occupy (and in fact occupying) the Property.[2]

The Defendant further argues that it should not be liable for foreclosing on a predatory home loan, and bizarrely cites: *McKensi v. Bank of America, N.A.*, in support of this proposition, when, one

---

2  Another potentially useful reminder for the Court at this stage is that, although Plaintiff's counsel perhaps ought to have specifically stated, in the body of the Verified Complaint, that the Plaintiff occupied the Property at the time he gave the loan to the Defendant, or its predecessor in interest, that inartfulness in drafting ought not be held against the Plaintiff, see, *e.g. McKensi*, infra.

reading *McKensi* can only note that it is directly inapposite, C.A.No.: 2009-11940 at 11 (D.Mass.2009). "If, in fact, McKensi is able to prove that his loans were "presumptively unfair" or "doomed to foreclosure" and that such loans were "within established concepts of unfairness at the time the loans were made[,]" it remains an open question whether the Bank may be held liable for seeking to enforce loans which it knew or should have known were unfair," see *Id.* citing: *Commonwealth v. Fremont Investment and Loan*, 452 Mass. 733, 743 (2008).

The same principle is in place here. Even if this Court were to ignore the clear statutory mandate of the MPHLPA, and find the loan was not predatory, it may still find that the loan was violative of G.L.c. 93A, on its face, and that foreclosing on that loan therefore brought LNV's conduct within the "penumbra," of conduct described generally in *Fremont*, supra., and its progeny; *c.f. Frappier v. Countrywide Home Loans, Inc.,* Supra.

The Federal Court precedent alleged by the Defendant to support its position has little in common with the facts of the instant case. *Serra v. Quantum Loan Servicing* related primarily to claims of ownership of the Plaintiff's note, not at issue here, see: 2012 WL 3548037, *8 (D.Mass. 2012). While the Court in *McBride v. Am. Home Mort. Servicing, Inc.*, failed to find G.L.c. 93A liability, that failure to find liability was not premised on the Defendant's status as an assignee, see 2012 WL 931247, *3-*4 (D.Mass. 2012) (Zobel, J.). The Opinion in *McBride*, is light on specifics, and should is not persuasive for that reason. Indeed, the Court in *McBride* goes to great pains to point out that prior decisional law <u>supprts</u> finding G.L.c. 93A liability. Unlike in *McBride*, the Plaintiff has alleged that the Defendant knew his home loan was predatory, and this Court should infer that the loan was purchased for the collateral value of the home, and not because LNV Corporation had any real desire to work with the Plaintiff to achieve a modified loan, see Complaint, ¶¶ 29-32. These allegations

must be taken as true, and the appropriate inferences must be drawn in the Plaintiff's favor, for the purposes of this Motion. The Plaintiff can clearly, plausibly, prove a set of facts entitling him to relief, assuming the foregoing.

Likewise, the Defendant's reliance on *Mae v. U.S. Bank, N.A. as Trustee,* is misplaced. The Plaintiff does not condition his claims "solely" on the behavior of his mortgage orginator, Avelo Mortgage, LLC, see: 2011 WL 2413319 (Bkrtcy.D.Mass. 2011). Indeed, that is *why Avelo is a party to this lawsuit.* Rather, the Plaintiff relies on the "second holding" of *McKensi* which makes plain that foreclosure on a loan known to be predatory is a violation, or could be a violation, of G.L.c. 93A. The cases cited by the Defendant in support of its Motion to Dismiss, do not really bear on the issues in this case, and should be ignored by the Court.

Accordingly, LNV's Motion to Dismiss the Plaintiff's G.L.c. 93A claims must be DENIED.

> (C) *This Court Must Deny the Defendant's Motion to Dismiss the Plaintiff's Massachusetts Fair Debt Collection Claims, Because there is, at Least, a Question of Fact, as to Whether the Plaintiff intended to Reside in the Property; in the Alternative, this Court Should Grant Leave to Amend the Complaint so the Plaintiff May State the Truth: That He Lived in the Property at the Time of the Refinance Giving Rise to This Case.*

The whole basis of the Defendant's Motion to Dismiss the Plaintiff's Massachusetts Fair Debt Collection Practices Claims is a check mark in a box marked "investment" attached to a loan application, which is, itself, attached to a response that the Defendant provided to the Plaintiff's G.L.c. 93A demand letter, which the Plaintiff faithfully appended to the Complaint (the Defendant, denied liability). As has been explained, the Plaintiff agreed to occupy the Property as an owner in the mortgage loan documents, and – per the same exhibit relied upon by the Defendant itself – borrowed the money to pay off his ex-wife.

While the Plaintiff's ex wife may no longer be a part of the Plaintiff's household, it is absurd in the extreme to suggest that payment to an ex-wife should be considered an "investment," purpose.[3] Were the Plaintiff not already entitled to his attorney's fees based on the need to remand this case to the State Court, he would seek fees for the disposition of this absurd argument.

The Defendant advances no other argument why the Plaintiff's fair debt claims should be dismissed. This is probably because there is no good argument to dismiss the Plaintiff's fair debt claims.

Accordingly, the Defendant's Motion to Dismiss the Plaintiff's fair debt claims must be DENIED.

<u>PLAINTIFF'S ATTORNEY'S FEES TO OPPOSE THIS MOTION</u>

The first document submitted by the Plaintiff to this Court was his Motion to Remand. To a great degree, this was an obligation of the Plaintiff, who was not entitled to take, "any action," in the District Court, or in furtherance of the litigation, if he wanted to protect his right to remand based on the Defendant's failure to request from Avelo Mortgage, LLC, agreement to Remove this Action, see *Murphy v. Newell Operating Co.*, 245 F. Supp. 2d 316, 317 (D. Mass. 2003)

The Defendant's refusal to agree to postpone the Plaintiff's obligation to respond to this Motion pending a ruling on his Motion to Remand, merits an award of Attorney's fees to the Plaintiff, pursuant to 28 U.S.C. 1447(c), assuming the Court remands this action to State Court.

---

3   There is some argument that payments to former spouses would fit the definition of the precise opposite of an "investment," though that is perhaps a discussion best reserved for cocktail hour.

## CONCLUSION

Because the Defendant clearly foreclosed on a predatory home loan, and because the Plaintiff is

also obviously a consumer, who refinanced to pay off consumer debt, LNV Corporation's

Motion to Dismiss must be DENIED.

Respectfully Submitted
The Plaintiff
By his Attorney,                                                    December 28th, 2012

/S/ Jonas Jacobson
_____
Jonas A. Jacobson (BBO: 676581)
Law Offices of Jonas Jacobson
872 Massachusetts Ave., Unit 1-6
Cambridge, MA 02139
(p) 617.230.2779
(f) 617.849.5547
jonas@jonasjacobson.com

## CERTIFICATION OF COUNSEL

I certify that this document was all served on counsel of record via the CM/ECF system.

/S/ Jonas A. Jacobson