UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. NO.: 2012:12085

STERGIOS PAPADOPOULOS,
    Plaintiff,

v.

LNV CORPORATION and AVELO MORTGAGE, LLC, ORLANS MORAN, PLLC
    Defendants

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION TO REMAND, AND FOR LEAVE TO AMEND HIS COMPLAINT TO ADD CLAIMS AGAINST AVELO MORTGAGE, LLC IN STATE COURT**

INTRODUCTION

This Court, at oral argument on the Plaintiff's Motion to Remand, additional briefing regarding the Plaintiff's Claims against Avelo Mortgage, LLC

    The Plaintiff retains meritorious claims against Avelo Mortgage because the loan at issue, whether commercial or not, is "unconscionable," per the Plaintiff's complaint, and per the eye of anyone reading through the terms of the Note and Mortgage, and the Plaintiff may make out a claim sounding in contract six years from the date of the tolling of the statute of limitations. Moreover, Avelo Mortgage, LLC has not entered an appearance in this litigation to defend itself, and this Court should not *sua sponte* dismiss the Plaintiff's claims. The Plaintiff is master of his case.

STANDARD

A Court reviewing a motion to remand must review the motion to remand first, to see whether it may, in fact, exercise subject matter jurisdiction over the case at bar. The command of Section 1447(c), "requires a remand as the first order of business under circumstances where the State court has jurisdiction but the federal court lacks both original and removal jurisdiction," *KCPO Employees*

*Credit Union v. Mitchell*, 421 F. Supp. 1327, 1328 (W.D. Mo. 1976) citing: 1A Moore's Federal Practice, P 0.169[1], p. 554. In fraudulent joinder cases, "the party seeking removal bears the burden of showing, by clear and convincing evidence, that the non-diverse defendant was fraudulently joined," *Simons v. Hitachi Am., Ltd.*, No. 06-11895, 2007 U.S. Dist. LEXIS 32379, 2007 WL 1306558, at *3 (D. Mass. May 3, 2007). "In deciding whether there is a "reasonable basis in law and fact" for the claim, the Court must resolve all disputed questions of fact and any ambiguities in the current controlling substantive law in plaintiff's favor," *Phillips v. Medtronic, Inc.*, 754 F. Supp. 2d 211, 215 (D. Mass. 2010).

The reasons for this should be obvious. While a Court's decision to remand are *not* subject to review by a Circuit Court, its decision *not* to remand, is. Even worse, if a Federal Court sitting in diversity should find fraudulent joinder, and allow a case to proceed, because it had dismissed a Defendant for "failure to state a claim," and if that dismissal were overturned on appeal, any activity that took place in the lawsuit would entitle the wrongly removed Plaintiff to his attorney's fees, at the expense of the Defendant. Moreover, all the work done by the parties, and the Court, in the case, would be for naught, because the Federal Court would have *never* had the subject matter jurisdiction to decide the controversy in the first place. As such, a decision to remand is superior to a decision to retain jurisdiction, since the Court sitting in Diversity plays games with the parties, and risks the waste of its own time in fruitless pursuit, if it errs.

To ensure the proper level of sensitivity to the federalism concerns involved, the court must resolve all doubts regarding federal jurisdiction in favor of remand to the state court. *Walker v. Waller*, 267 F. Supp. 2d 31, 32 (D.D.C. 2003); citing: *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *c.f. Gage v Carraher*, 154 US Appx 656, (1880) "It is duty of circuit court of United States to remand cause which has been removed from state court, when it shall appear, at any time after suit has been removed, that such suit does not involve dispute or controversy properly within jurisdiction of

court."

FACTS

Avelo Mortgage, LLC (herein "Avelo") brokered a loan to the Plaintiff which cost over $16,000.00 in various broker fees. The loan spread forty years of payments over a thirty year term, and in the end, the Plaintiff would have, essentially, built up $117,244.83 in equity, in exchange for $1,148,805.30 in interest charges and costs. The interest rate on the loan would never have been lower than 9.15%, and was much more than that for the entire time the Plaintiff was able to make payments. The loan, this Court may also notice, was brokered at a time when the average interest rate on a thirty year fixed mortgage hovered at around 6%.

Finally, it is clear that Avelo, which knew of the pay-off to Annmarie Whynot-Papadopulu (as evidenced by the addendum to the application of Mr. Papadopulos (see Exhibit G)) and inferring that she was Mr. Papadopulos' ex wife, took advantage of what was probably divorce related distress to sell him an extremely expensive loan product.

ARGUMENT

*(1).    Lending Money to Mr. Papadopulos Under Such Difficult Terms, Was Unconscionable Under the Circumstances.*

"The doctrine of unconscionability has long been recognized by common law courts in this country and in England." *Waters v. Min Ltd.*, 412 Mass. 64, 66 (1992). "A contract was determined unenforceable because it was unconscionable when the sum total of its provisions drives too hard a bargain for a court of conscience to assist.' *Id.*

"The doctrine of unconscionability has also been codified in the Uniform Commercial Code (code), G.L. c. 106, § 2-302 (1990 ed.), and, by analogy, it has been applied in situations outside the ambit of the code." *Waters*, supra at 67.

The UCC provides that "If the court as a matter of law finds the contract or any clause of the

3

contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result," See generally: G.L. c. 106, § 2-302.

"Unconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party and not to allocation of risk because of superior bargaining power." *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 292-293 (1980). In essence, if the provisions of the contract "drive too hard a bargain," a court of conscience will not assist its enforcement." *Id.* "The issue is one of law for the court, and the test is to be made as of the time the contract was made." *Zapatha*, supra. at 291. The concept of oppression deals with the substantive unfairness of the contract term. This two-part test for unconscionability involves determining whether there was "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." See *Id.* at 294 n. 13; Citing: *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C.Cir.1965). The *Williams* case, involving the installment contract sale of furniture at a hard bargain to consumers, set forth the following:

> "Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. The manner in which the contract was entered is also relevant to this consideration. Did each party to the contract, considering his obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices? Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld.

4

When a note is given for a fixed sum representing principal and interest for the period of the note, the clause accelerating the maturity of the debt will not be enforced as to future interest. "The mortgage was security not only for the principal but also for payment of interest. To allow a charge for unearned interest in the attending circumstances would be unconscionable." *Stilian v. GTC Corp.,* 17 Mass.App.Ct. 953, (Mass.App.,1983). Citing: *A-Z Servicenter, Inc. v. Segall*, 334 Mass. 672, 677, (1956) (holding that a liquidated damages clause may not be, "grossly disproportionate to a reasonable estimate of actual damages").

A Court may find that Avelo Mortgage is liable for Mr. Papadopulos' damages for brokering the mortgage at issue, even if it should still, for some reason, enforce the instance mortgage and note in this case.

Since that possibility remains extant, and since this Court must resolve all issues of <u>fact</u> and <u>law</u> in favor of a Plaintiff seeking to remand his case to State Court, this Court cannot *sua sponte* dismiss Avelo from this action. The Plaintiff, of course, may seek to remand his claims based on the ruling of either this Court (in the event that, for whatever reason, this matter should remain in the Federal District Court) or in the State Court, pursuant to the Orders of whichever Court may have jurisdiction in this case. In any case, it would be unfair to the Plaintiff to ask him to amend his complaint at this stage, with the issue of remand – which must be determined prior to this Court taking any other action in this case – still very much up in the air. (The Plaintiff may, for example, seek to amend his complaint to include a count for "unconscionability" against Avelo).

As is plain from the case law, dismissal *with prejudice* is a disfavored remedy, and Plaintiff should generally be granted leave to amend. Since there is a claim available to the Plaintiff as against the Defendant, Avelo Mortgage, LLC, which did not assent to removal in this case, Plaintiff's remand motion must be ALLOWED.

## CONCLUSION

Because the Plaintiff may state a claim against Avelo Mortgage, LLC, of some kind or another, and because Avelo has failed to respond to the Complaint in this case, this case must be remanded to the State Court, in total, where Plaintiff may seek leave to amend his Complaint.

Respectfully Submitted
The Plaintiff
By his Attorney,                                         February 4th, 2012

/S/ Jonas Jacobson
_____
Jonas A. Jacobson (BBO: 676581)
Law Offices of Jonas Jacobson
872 Massachusetts Ave., Unit 1-6
Cambridge, MA 02139
(p) 617.230.2779
(f) 617.849.5547
jonas@jonasjacobson.com

## CERTIFICATION OF COUNSEL

I certify that this document, the was served on counsel of record via the CM/ECF system.

/S/ Jonas A. Jacobson